Roger N. Behle, Jr. (174755)
Kevin D. Gamarnik (273445)
Jordan A. Liebman (317930)
**FOLEY BEZEK BEHLE & CURTIS, LLP**
15 West Carrillo Street
Santa Barbara, CA 93101
Tel:   (714) 556-1700
Fax:   (714) 546-5005
Email: rbehle@foleybezek.com
          kgamarnik@foleybezek.com
          liebman@foleybezek.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALLSTER, INC., dba WALLSHOPPE, a California corporation, individually and on behalf of similarly situated persons; and NATHAN TURNER, an individual, individually and on behalf of similarly situated persons,<br><br>          Plaintiffs,<br><br>     vs.<br><br><br>REDBUBBLE, INC., a Delaware corporation; and DOES 1 through 60, inclusive,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br>1. **Copyright Infringement—17 U.S.C. § 101, et seq.;**<br>2. **Unfair Business Practices—Cal. Bus. & Prof. Code § 17200, et seq.;**<br>3. **False Designation of Origin—15 U.S.C. § 1125;**<br>4. **Unfair Business Practices—Cal. Bus. & Prof. Code § 17200, et seq.**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**Introduction**

1.      This is a proposed class action roughly comprising two classes: (1) copyright holders and (2) artists.

2.      Plaintiff Wallster, Inc., dba Wallshoppe ("Wallshoppe"), on behalf of itself and all similarly situated persons, and in the public interest, brings this action seeking, among other things, injunctive relief, monetary damages, and costs and attorneys' fees based on Defendant Redbubble Inc.'s ("Defendant or "Redbubble") copyright infringement and unfair business practices.

3.      Additionally, Plaintiff Nathan Turner, on behalf of himself and all similarly situated persons, and in the public interest, brings this action seeking, among other things, injunctive relief, monetary damages, and costs and attorneys' fees based on Redbubble's violations of the Lanham Act and unfair business practices.

**Parties**

4.      Plaintiff Wallster, Inc., dba Wallshoppe, is a California corporation with its headquarters in Vernon, California.

5.      Plaintiff Nathan Turner is an individual living and working in Los Angeles County, California.

6.      Defendant Redbubble, Inc., is a Delaware corporation with its headquarters and principal place of business located in the City and County of San Francisco, California.

7.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 60, inclusive, are unknown to Plaintiffs at this time. Plaintiffs therefore sue those Defendants by their fictitious names. Plaintiffs will ask leave of the Court to amend this Complaint to set forth the true names of those Defendants when ascertained. Each of the Defendants, including those named as a DOE, is responsible in some manner for the events and happenings herein referred to, including without limitation on an agency, respondent superior,

partnership, joint venture, co-conspirator and/or alter ego theory, and is therefore responsible for the damages alleged herein.

## Jurisdiction and Venue

8.     This action arises under the Copyright Act of the United States, 17 U.S.C. §§ 501, *et seq.*, as well as the Lanham Act, 15 U.S.C. § 1051, *et seq.* The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1338(a). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

9.     This Court has personal jurisdiction over Defendant because it has sufficient minimum contacts with California because, among other things, (a) Defendant's principal place of business is in California; (b) Defendant transacts a substantial amount of business in California, including within this District; and (c) Defendant purposefully availed itself of the laws and markets of this District through the promotion, sale, and distribution of its services and products from within California and within this District.

10.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that Defendant committed wrongs within this District, Wallshoppe's property is situated in this District, Plaintiffs suffered injury in this District, and Defendant transacts and solicits a substantial amount of business within this District.

## Factual Background

**A. Redbubble**

11.     Redbubble is a global online retailer that sells apparel, stickers, masks, art prints, home goods, and stationary, among other products. Redbubble's online retail platform serves two kinds of users: (1) those who upload goods to Redbubble's website to enable Redbubble to market and sell those products to consumers ("Sellers") and (2) the consumers who purchase products uploaded to the Redbubble online retail platform from Redbubble ("Consumers").

12.     For Sellers who are artists, Redbubble promotes itself as a one-stop

retail platform for artists who desire to have their art printed on various products and sold to a global audience. To this end, Redbubble offers to handle all the marketing, sales, and fulfillment of products; all that the artist needs to do is upload his or her art and Redbubble handles the rest.

13.     Redbubble provides a platform for Sellers to upload their designs to Redbubble's website and then pick which products, such as t-shirts or smart-phone cases, they want their designs to be featured on. Those products then appear on Redbubble's website for the public to view and purchase.

14.     When a Seller uploads a design to Redbubble's website, the Seller chooses the title, "tags" (which are essentially search terms that allow consumers to search for the design), and a description for the design. If a Seller uploads a design of, for example, a California redwood and chooses tags such as "tree," "redwood," "nature," and "forest," consumers can potentially find products featuring that design by using those search terms in the search bar on Redbubble's website.

15.     According to Redbubble's website, Redbubble and the Seller then share the profits from the sale of products featuring the Seller's designs. Each type of product Redbubble sells is assigned a general "base price," which represents the amount of profit-sharing Redbubble receives from each sale. And, according to Redbubble, these "base prices" vary depending on where the product is made and shipped. Additionally, Redbubble maintains the right to alter the "base price" for categories of products at any time. Meaning, Redbubble can, at any time, determine what amount of money it receives from the sale of a product.

16.     Apart from the "base price" is the "artist margin," which the amount of profit sharing the Seller makes from each sale. The "artist margin" is based on a percentage of the "base price" that the Seller chooses. Redbubble sets the default markup for Sellers as 20% of the base price, but this can be adjusted by the Seller through their account on Redbubble's website. Thus, the default pricing set by Redbubble results in it receiving five times more profit than the Seller for each sale.

17.     Redbubble's own website provides an example for how this profit-sharing model works. According to Redbubble, a large framed art print that is shipped to an address in the United States has a "base price" of $125. If the Seller sets a 20% markup for the art print, they receive an "artist margin" of $25 for each sale of the print (20% of $125). The $125 "base price" and $25 "artist margin" are added together for the actual retail price, which in this example is $150. Thus, when a large art print is sold, the consumer pays the retail price of $150, and of that amount Redbubble receives $125 and the Seller receives $25.

18.     Other than selecting (a) the products on which their designs will appear, (b) search terms for the designs, and (c) what profit margin they want for each product, Sellers generally have no control over or involvement with the sale of Redbubble's products that feature their designs. The final price of a product is determinative on the "base price" set by Redbubble. Sellers do not participate in the manufacturing of products featuring their designs, nor do they participate in the sale or fulfillment of the products. Instead, when a Consumer orders one of Redbubble's products, Redbubble directs a third-party manufacturer from among several it has selected to create the product. Only Redbubble communicates and works with manufacturers to create the products. In this way, Redbubble maintains complete control over which third-party manufacturers receive orders to produce its products.

19.     Redbubble handles all matters related to shipping as well. And when it comes to customer complaints or returns, Redbubble handles those too.

20.     When a product is delivered to a customer, it comes in Redbubble packaging. As for clothing products, the clothes have Redbubble branding on their tags.

21.     Accordingly, the Sellers, themselves, do not keep or manage inventory of any products, they do not dictate the retail price of each product (Redbubble always picks its own "base price" and has unilateral authority to adjust that price), they do not process sales, they do not handle shipping or returns, they do not

manufacture the physical products sold, they do not pick which manufactures manufacture the products, they do not set the purchase terms with the customers, and they do not communicate with the manufactures about orders or any other related business.

22.    Other than the Sellers who upload designs to Redbubble's website and partner with Redbubble, the other primary user of Redbubble's website are Consumers around the globe.

23.    On Redbubble's website, Consumers can search for designs and products to purchase. While Consumers can find art created by the actual artists that created the art, they are also provided access to other art, presented as being genuine, but what in reality are counterfeit designs made to imitate or "look like" other designs. As described more fully below, Redbubble's online store contains hundreds, if not thousands, of infringing and/or counterfeit products. However, given the way these products are presented alongside genuine products, there is no way for Consumers to definitively discern which are infringing and which are genuine. As such, Consumers are left to their own judgment about which product is legitimate and which product is an infringing counterfeit.

24.    If a member of the public is subscribed to Redbubble's mailing list, they receive e-mail advertisements from Redbubble containing photos of products represented to have been created by independent artists that have partnered with Redbubble. These advertisements feature products that contain designs purportedly sold by artists, but omitted from the advertisements are the artists' names or any identifying information about them.

**B. Redbubble's infringement of Wallshoppe's copyright**

25.    Wallshoppe sells high-quality wallpaper featuring various designs to consumers throughout the United States. It has been in business since 2013.

26.    Wallshoppe is the valid owner of the copyrights for its designs. In July 2016, Wallshoppe registered the design(s) relevant to this litigation with the U.S.

Copyright Office and received registration number VAu 1-258-724. A true and correct copy of the relevant Certificate of Registration is attached hereto as **Exhibit A**.

27.     One of Wallshoppe's copyrighted designs is the "PACIFICO PALM" design:



28.     "PACIFICO PALM" is one of Wallshoppe's best-selling and most recognizable designs.

29.     In late 2021, Wallshoppe became aware that Redbubble was selling products featuring the "PACIFICO PALM" design, including t-shirts and notebooks, among others.

30.     Wallshoppe has never licensed or otherwise authorized Redbubble to copy, distribute, or publicly disseminate its "PACIFICO PALM" design, or any of Wallshoppe's copyrighted designs for that matter, or to make derivative works based upon it.

31.     Redbubble has profited from its unauthorized use of Wallshoppe's copyrighted design through the sale of the infringing goods, diverting profits from

the sale of authentic Wallshoppe goods, and causing harm to Wallshoppe's reputation and goodwill.

**C. Redbubble's unauthorized use of art created by Nathan Turner**

32.    Nathan Turner is a well-known artist and designer whose work has been featured in countless magazines and television shows. Mr. Turner's work is distinctive and functions as a means of identifying Mr. Turner as the source of the art.

33.    Mr. Turner opened his first store in 2002 and soon after launched his design firm, which focuses on residential and commercial design projects around the world.

34.    Several publications have praised Mr. Turner for his designs, including Elle Decor Magazine which named him as one of the best designers in the world.

35.    Mr. Turner has been a contributing editor for design, home, and lifestyle magazines, such as Architectural Digest, Domino Magazine, and C Magazine.

36.    Mr. Turner starred in Bravo TV's *Million Dollar Decorators* and has appeared in many other television shows, including regular appearances on The Today Show.

37.    Mr. Turner is the author of two successful books: *Nathan Turner's American Style: Classic Design and Effortless Entertaining* (2012) and *Nathan Turner's I Love California: Live, Eat, and Entertain the West Coast Way* (2018). Both are carried and sold by major booksellers, such as Barnes and Noble.

38.    Mr. Turner has licensed his designs to several retailers, such as Wallshoppe, Elite Leather, and Wendover Art, among others.

39.    Mr. Turner created the "PACIFICO PALM" design as a "work for hire" for Wallshoppe.

40.    In late 2021, Mr. Turner became aware that Redbubble was selling products containing distinctive elements used to identify Mr. Turner as the source of

the art, including t-shirts and notebooks, among others. Mr. Turner has not authorized Redbubble to sell products featuring his distinctive design elements.

**D. Redbubble's infringement and wrongful conduct is widespread**

41.     Redbubble's infringement goes far beyond its unlicensed sale of products featuring the "PACIFICO PALM" design and distinctive elements associated with Mr. Turner.

42.     While Redbubble does sell genuine designs made by independent artists in partnership with Redbubble, there are hundreds, if not thousands, of products sold by Redbubble that are counterfeit or infringing.

43.     At any given point of time, Redbubble offers for sale unlicensed products featuring copyrighted designs, art, characters, photography, logos, etc. owned by others.

44.     Redbubble knows—or in the exercise of reasonable diligence, should know—that a significant portion of its sales are based on unlicensed products that infringe on others' copyrights. In its 2019 annual report, Redbubble disclosed that revenue from "authentic sellers . . . represented 76% of Redbubble product revenue."[1] Redbubble defined these "authentic sellers" as "artists that tend to upload high quality, *original*, works."[2] This, among other facts, shows Redbubble knows that there are Sellers selling unauthentic counterfeit products on its website.

45.     There are essentially only two categories of non-infringing products sold by Redbubble. The first is original artwork sold by the actual artists who created the artwork. The second is comprised of a handful of copyright owners or licensees who have authorized Redbubble to sell products through Redbubble's "Fan Art Program." This program authorizes artists to design, and Redbubble to sell, officially

---

[1] Redbubble, REDBUBBLE ANNUAL REPORT 2019,
https://shareholders.redbubble.com/site/PDF/b7a4aa3c-5ef8-4e05-89bd-2be3771da838/AnnualReport2019.
[2] *Id.* (emphasis added).

licensed designs for specific brands. For example, CBS has authorized Redbubble to sell products featuring the "Star Trek," "Twin Peaks," "Dexter," and "BILLIONS" trademarks and copyrighted graphics, among others. The properties licensed through Redbubble's "Fan Art Program" are listed on Redbubble's website.

46. Since Redbubble has chosen to publicly disclose on its website the rights holders and/or brands that have *licensed or consented* to Redbubble's use of their works and marks, it follows that those rights holders and/or brands whose names are not listed have not consented to or licensed such use. Thus, whether or not a product bearing copyrighted graphics or trademarks is licensed is readily ascertainable from Redbubble's website. Despite this, Redbubble knowingly sells hundreds, if not thousands, of unlicensed works involving other brands and properties that are not listed under its "Fan Art Program."

**E. Redbubble's inadequate procedures for addressing infringement**

47. Redbubble's procedures and policies are wholly inadequate for addressing the clear cases of infringement by its products. In fact, its policies and procedures practically allow Redbubble to avoid any responsibility for policing its own products until it is notified of infringement by the copyright holder. Redbubble can essentially stick its head in the sand and let infringers run rampant on its website to sell and profit from counterfeit and/or infringing works, until a copyright holder goes through Redbubble's own procedures to assert their rights.

48. Per its "user agreement," the artists uploading the designs to Redbubble's website "take full responsibility" for the work. Based on this fact and from review of Redbubble's "Intellectual Property and Publicity Rights" policies and procedures, Redbubble takes no action to police the upload and sale of infringing works on its website until Redbubble is notified of the infringement by the copyright holder.

49. Redbubble could take action to filter out, address, and remove infringing works when they are uploaded to its website. For example, Redbubble

could at the very least scrutinize works that bear tags related to the intellectual property of others, such as "Micky Mouse," "Superman," or "Harry Potter," among others. Redbubble could set up a system that alerts it whenever these tags and tags related to other well-known trademarks and copyrighted works are used, which would allow Redbubble to review the work and determine whether it is an unlicensed reproduction or derivative of another's intellectual property. But Redbubble does not do that or, at the very least, it takes no responsibility for its failure to remove infringing works.

50. Redbubble even knows which intellectual property is licensed and which is not. When a Seller uploads a design that is a copy or derivative of a work not licensed through Redbubble's "Fan Art Program," Redbubble knows, or in the exercise of reasonable diligence should know, that the design is not authorized by the copyright holder or licensee.

51. Instead of Redbubble policing its own online marketplace for infringing works, it places the onus on the copyright holders to track down and address the unlicensed counterfeit products.

**F. Copyright holders class**

52. Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Wallshoppe seeks to bring claims on behalf of a class of copyright holders. And Plaintiff Nathan Turner seeks to bring claims sounding in trademark on behalf of a class of artists.

53. Plaintiff Wallshoppe seeks to represent a nationwide class as follows:

     a. "All copyright holders or licensees whose works registered with the United States Copyright Office have been reproduced, displayed, adapted, licensed, sold and/or distributed via the Redbubble online platform without authorization." Excluded from the class are attorneys for Plaintiffs, the Defendants and their

officers and directors, family members, legal representatives, heirs, successors and/or assigns.

54.     Wallshoppe seeks relief for itself and all members of the class.

55.     While the exact number of members in the Class are unknown to Wallshoppe at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon a review of (1) Redbubble's products offered for sale on its website, (2) the entities who have consented to Redbubble's use of their work through the "Fan Art Program," and (3) Redbubble's records. It is estimated that the members of the Class exceed 1,000 individuals/firms. Therefore, the Class is so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

56.     There are questions of law and/or fact common to the class including, but not limited to:

a.     Whether Redbubble is responsible for verifying the copyright ownership and/or license status to products uploaded to and sold on its website;

b.     Whether Redbubble knows or, in the exercise of reasonable diligence,  should have known that products bearing copyrightable subject matter were being sold on its website by those without authorization, therefore violating class members' copyrights;

c.     Whether Redbubble has directly infringed on the copyrighted works of copyright holders by operating its online store and controlling the sale, manufacture, delivery, and customer-relation aspects of the sale of each Redbubble product;

d.     Whether Redbubble's policies and procedures are sufficient for addressing and removing infringing works from its online store; and

e.     Whether Redbubble's policies and procedures to mitigate the risk

of copyright infringement on its website are commensurate with standards in the industry set by comparable businesses.

57.     These and other questions of law and/or fact are common to the class and predominate over any question affecting only individual class members.

58.     Wallshoppe's claims are typical of the claims of the class in that, among other things, Wallshoppe and other class members' copyrights were infringed by Redbubble's sale of unlicensed products.

59.     Wallshoppe will fairly and adequately represent the interests of the class. Wallshoppe's claims are typical of those of the class. Wallshoppe's interests are fully aligned with those of the class. And Wallshoppe has retained counsel experienced and skilled in complex class action litigation.

60.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged, because such treatment will allow many similarly-situated persons to pursue their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

61.     Wallshoppe knows of no difficulty likely to be encountered in the management that would preclude its maintenance as a class action.

**G. Artist class**

62.     Plaintiff Nathan Turner seeks to represent a nationwide class as follows:

a.     "All artists whose art contains distinctive elements, and which art through widespread commercial use has become associated with the artist in the minds of consumers, and whose art has been sold and/or distributed without authorization in connection to products sold and/or distributed by Redbubble, causing or likely to cause confusion in the minds of consumers." Excluded from the class are attorneys for Plaintiffs, the Defendants and their officers and

directors, family members, legal representatives, heirs, successors or assigns.

63.     Mr. Turner seeks relief for himself and all members of the class.

64.     While the exact number of members in the Class are unknown to Mr. Turner at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon a review of (1) Redbubble's products offered for sale on its website, (2) the entities who have consented to Redbubble's use of their work through the "Fan Art Program," and (3) Redbubble's records. It is estimated that the members of the Class exceed 1,000 individuals/firms. Therefore, the Class is so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

65.     There are questions of law and/or fact common to the class including but not limited to:

    a.     Whether Redbubble verifies the identity of the artist, or ownership and/or license status, of art-related products uploaded to and sold on its website;

    b.     Whether Redbubble knows or, in the exercise of reasonable diligence,  should have known whether art-related products on its website were being sold by those without authorization, therefore violating the rights of artists whose work has become distinctive;

    c.     Whether Redbubble's policies and procedures are sufficient for addressing and removing unauthorized works from its online store;

    d.     Whether Redbubble's policies and procedures regarding the clearing of art-related products on its website prior to sale are comparable to the policies and procedures used by others in the industry; and

    e.     Whether Redbubble willfully and purposely misled, deceived, and/or confused customers and the public as to the origin and

authenticity of the art-related products offered, marketed, and/or distributed in its online retail business.

66.    These and other questions of law and/or fact are common to the class and predominate over any question affecting only individual class members.

67.    Mr. Turner's claims are typical of the claims of the class in that, among other things, Mr. Turner and other class members' artwork, designs, and/or prints were featured in Redbubble's products without authorization.

68.    Mr. Turner will fairly and adequately represent the interests of the class. Mr. Turner's claims are typical of those of the class. Mr. Turner's interests are fully aligned with those of the class. And Mr. Turner has retained counsel experienced and skilled in complex class action litigation.

69.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged, because such treatment will allow many similarly-situated persons to pursue their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

70.    Mr. Turner knows of no difficulty likely to be encountered in the management that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### Copyright Infringement

**(By Plaintiff Wallshoppe Against Defendant and DOES 1 through 10)**

**(On Behalf of the Copyright Holders Class)**

71.    Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

72.    Plaintiff Wallshoppe is the sole owner of the copyright in an original work that is fixed in a tangible medium of expression. Wallshoppe obtained the copyright for its work, "PACIFICO PALM," on July 12, 2016, under registration number VAu 1-258-724 (See Exhibit A).

73.     Defendant has produced and reproduced a copy and/or derivative work based on Plaintiff's protected work—"PACIFICO PALM"—without Wallshoppe's consent.

74.     Defendant has also produced and reproduced copies and/or derivative works based on the other putative class members' protected work without consent.

75.     Defendant sells the above-mentioned infringing works on its online store, directs third party manufacturers to create such infringing works, and delivers the infringing works to its customers as part of its business.

76.     Defendant's infringement has been undertaken knowingly, and with intent to financially gain from Wallshoppe and the putative class' protected copyrighted work. Defendant has failed to exercise its right and ability to supervise persons within its control to prevent infringement, and it did so with intent to further its financial interest in the infringement of Wallshoppe and the putative class's protected work. Accordingly, Defendant has directly, contributorily, and vicariously infringed Wallshoppe and the putative class's protected work.

77.     Because of Defendant's infringing acts, Wallshoppe and the putative class are entitled to actual damages and profits attributable in an amount to be proven at trial, and all other relief allowed under the Copyright Act (17 U.S.C. §§ 101, et seq.), including, without limitation, statutory damages for either non-willful or willful infringement.

## SECOND CAUSE OF ACTION

### Unfair Business Practices—Bus. & Prof. Code § 17200, et seq.

### (By Plaintiff Wallshoppe Against Defendant and DOES 1 through 10)

### (On Behalf of the Copyright Holders Class)

78.     Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

79.     Defendant's wrongful conduct complained of herein as to the copyright holders class constitutes an unfair business practice in violation of California's

statutory unfair competition laws. For example, the policies and procedures employed by Defendant for addressing and removing infringing works from its online store constitutes an unfair business practice, as they are below industry standards and are insufficient for avoiding or addressing infringement.

80.    Defendant's conduct has resulted in a wrongful diversion of business, money, and/or property from Wallshoppe and the other putative class members to Defendant.

81.    Unless enjoined, Defendant will continue to deceive consumers and compete unfairly and will continue to employ inadequate policies and procedures that are below industry standards.

82.    Defendant must be enjoined from further infringing Wallshoppe and the putative class' copyrights. Further, an injunction must be issued directing Defendant to employ effective policies and procedures for addressing and removing infringing work from its online store that meet the relevant industry standards.

83.    As a result of this unfair competition by Defendant, Wallshoppe and the other putative class members have suffered and will continue to suffer irreparable injury to their business reputation and goodwill.

<u>**THIRD CAUSE OF ACTION**</u>

**False Designation of Origin—15 U.S.C. § 1125**

**(By Plaintiff Nathan Turner Against Defendant and DOES 1 through 10)**

**(On Behalf of the Artists Class)**

84.    Plaintiffs repeat and incorporate by reference all preceding paragraphs and re-allege them here as though fully set forth herein.

85.    Mr. Turner and the putative class have created artwork, designs, and/or prints as part of their business. These works have been featured on products for sale to the public.

86.    Mr. Turner and the putative class never consented to Defendant selling products featuring their works. Despite this, Defendant sold, and continues to sell,

art-related products containing distinctive elements of Mr. Turner's and the putative class members' works.

87.     Defendant engaged in such wrongful conduct with the willful purpose of misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the goods and services offered, marketed, or distributed in connection with their online retail business. Defendant's conduct constitutes false designation of origin in violation of the Lanham Trademark Act, set forth at 15 U.S.C. § 1125. Specifically, there is a likelihood of confusion among the consuming public that the works featured in Defendant's products are Defendant's, or a partner of Defendant's, and not Mr. Turner and the putative class'.

88.     Defendant's wrongful conduct is likely to continue unless restrained and enjoined.

89.     As a result of Defendant's wrongful conduct, Mr. Turner and the putative class have suffered and will continue to suffer damages. Mr. Turner and the putative class are entitled to injunctive relief and to an order compelling the impounding of all distribution of Defendant's unauthorized products. Mr. Turner and the putative class have no adequate remedy at law for Defendant's wrongful conduct because, among other things, (a) their works are unique and valuable property which have no readily-determinable market value, (b) Defendant's advertising, marketing, and/or distribution of Mr. Turner and the putative class' works constitutes harm to them such that they could not be made whole by any monetary award, and (c) Defendant's wrongful conduct, and the resulting damage to Mr. Turner and the putative class, is continuing.

## FOURTH CAUSE OF ACTION

**Unfair Business Practices—Bus. & Prof. Code § 17200, et seq.**

**(By Plaintiff Nathan Turner Against Defendant and DOES 1 through 10)**

**(On Behalf of the Artists Class)**

90.     Plaintiffs repeat and incorporate by reference all preceding paragraphs

and re-allege them here as though fully set forth herein.

91.   Defendant's wrongful conduct complained of herein as to the artists constitutes an unfair business practice in violation of California's statutory unfair competition laws. For example, the policies and procedures employed by Defendant for clearing art-related products, and for mitigating, addressing and/or removing unauthorized art-related products from its online store constitutes an unfair business practice, as these policies and procedures are below industry standard and are insufficient for their intended purposes.

92.   Defendant's conduct has resulted in a wrongful diversion of business, money, and/or property from Mr. Turner and the other putative class members to Defendant.

93.   Unless enjoined, Defendant will continue to deceive consumers and compete unfairly and will continue to employ inadequate policies and procedures that are below industry standards.

94.   Defendant must be enjoined from further appropriating and using Mr. Turner and the putative class' works without authorization. Further, an injunction must be issued directing Defendant to employ effective policies and procedures for addressing and removing unauthorized work from its online store that meet the relevant industry standards.

95.   As a result of this unfair competition by Defendant, Mr. Turner and the other putative class members have suffered and will continue to suffer irreparable injury to their business reputation and goodwill.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Wallshoppe and the copyright holders class pray for judgment, as follows:

1.   That Defendant be ordered to pay to Plaintiff and the other putative class members all damages, including future damages, that they have sustained, or will sustain, as a consequence of the acts complained of

herein and that Plaintiff and the other putative class members be awarded any profits derived by Defendant as a result of said acts, or as determined by an accounting, or in the alternative, statutory damages, pursuant to 17 U.S.C. § 504;

2. For injunctive relief enjoining Defendant from continuing to infringe on Plaintiff and the other putative class members' protected work;

3. For injunctive relief directing Defendant to employ effective policies and procedures for addressing and removing infringing work from its online store that meet the relevant industry standards;

4. For costs of suit, attorneys' fees, and expenses incurred herein; and

5. For such other and further relief as the Court may deem proper.

WHEREFORE, Plaintiff Nathan Turner and the artists class pray for judgment, as follows:

1. That Defendant be ordered to pay to Plaintiff and the other putative class members all damages, including future damages, that they have sustained, or will sustain, as a consequence of the acts complained of herein;

2. For injunctive relief enjoining Defendant from continuing to offer, market, or distribute without authorization Plaintiff and the other putative class members' works;

3. For injunctive relief directing Defendant to employ effective policies and procedures for addressing and removing unauthorized works from its online store that meet the relevant industry standards;

4. For costs of suit, attorneys' fees, and expenses incurred herein; and

5. For such other and further relief as the Court may deem proper.

///
///

CLASS ACTION COMPLAINT

1    Dated: May 3, 2022                    FOLEY BEZEK BEHLE & CURTIS, LLP

2

3

4                                         By:   */s/ Roger N. Behle, Jr.*

5                                                Roger N. Behle, Jr. (174755)
                                                 Attorneys for Plaintiff
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

## <u>**JURY TRIAL DEMANDED**</u>

2

3       Plaintiff hereby demands a jury trial on all causes of action for which a jury

4   is available under the law.

5

6   Dated: May 3, 2022              FOLEY BEZEK BEHLE & CURTIS, LLP

7

8

9                                  By:   */s/ Roger N. Behle, Jr.*

10                                        Roger N. Behle, Jr. (174755)
                                          Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28